# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEFFREY E. MARSHALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-007-SPS |
| | ) |
| COMMISSIONER of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Jeffrey E. Marshall requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was forty-six years old at the time of the administrative hearing (Tr. 40, 119). He completed the tenth grade while attending special education classes, and has worked as a gate attendant (Tr. 30, 141). The claimant alleges that he has been unable to work since his application date of May 20, 2013, due to double vision, right shoulder injury, having one kidney, a left knee injury, high blood pressure, complications from his appendix rupturing in 2006, stomach pain, and bipolar disorder (Tr. 140).

**Procedural History**

On May 20, 2013, the claimant applied for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His application was denied. ALJ Ralph F. Shilling held an administrative hearing and determined the claimant was not disabled in a written opinion dated August 28, 2015 (Tr. 21-32). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that the claimant had the RFC to lift/carry ten pounds occasionally and less than ten pounds frequently, stand/walk for two hours in an eight-hour workday, and sit six hours in an eight-hour workday. Additionally, he limited the claimant to no climbing or crawling, and no using ladders, ropes, or scaffolds; found that he could occasionally balance, stoop, bend,

squat, and kneel; and found that he should avoid vibration. Finally, he found that the claimant could have no more than occasional contact with the public, and only occasional interaction with coworkers or supervisors (Tr. 27). The ALJ found that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work that he was capable of performing, *i. e.*, electronics assembler, lamp shade assembler, and envelope addresser (Tr. 30-31).

**Review**

The claimant contends that the ALJ erred by: (i) failing to give him a proper hearing; (ii) failing to properly consider the evidence, particularly the evidence regarding his mental impairments, and (iii) failing to make proper step five findings as a result of the earlier errors, particularly with regard to his illiteracy. The Court agrees with the claimant's second and third contentions, and the decision of the Commissioner should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of bipolar disorder, attention deficit hyperactivity disorder, mental health issues under Listing 12.08, hernias status post-repair, a history of appendix surgery, hypertension, and left knee degenerative joint disease (Tr. 23). The claimant reported in his application that he completed the tenth grade and attended special education classes (Tr. 141). Additionally, the claimant, who had no representative at the administrative hearing, testified at the administrative hearing that he got as far as the tenth grade in school (Tr. 40). The ALJ did not inquire as to whether the claimant was in special education classes while in school, nor did he inquire about the claimant's illiteracy (Tr. 40-45).

The record reflects that the claimant had previously been awarded benefits, but that they had been terminated upon his incarceration in 2012 (Tr. 237). Just prior to his incarceration, the claimant received outpatient treatment at Carl Albert Community Mental Health Center, and was assessed with bipolar disorder, most recent episode mania, severe with psychotic features (Tr. 299). While incarcerated from June 2012 through May 2013, the claimant's prison medical records reflect diagnoses of, *inter alia*, a mood disorder not otherwise specified and bipolar disorder not otherwise specified (Tr. 237). A prison psychiatry note also reflects the claimant's reported inability to read to write (Tr. 267-268).

Medical records prior to the claimant's application date were submitted, and included a psychological evaluation conducted by Dr. Robert B. Beck, Ph.D., on November 17, 2008 (Tr. 189). As part of the evaluation, he administered the WRAT-3 (Wide Range Achievement Test 3), in which the claimant's demonstrated a second-grade reading level and a sixth-grade arithmetic level (Tr. 190). Dr. Beck stated that the claimant "basically demonstrated an inability to read," which he found was significant in relation to the also low arithmetic skills (Tr. 190). Dr. Beck also administered the WAIS-III test for intellectual assessment, which produced a verbal score of 68, and performance score of 79, and a Full Scale IQ score of 71 (Tr. 193). Dr. Feir thus found the claimant had borderline intellectual functioning (Tr. 279). Dr. Beck pointed out the 11-point difference between the verbal and performance IQ scores, as well as a 10-point difference between a Verbal Comprehension Index (67) and Perceptual Organization Index (78) (Tr. 193). He then stated:

> It would appear as though these learning difficulties, from a verbal viewpoint, have been relatively consistent throughout Mr. Marshall's lifetime. Even though there is a technical overlap, generating a borderline score in the Full Scale IQ, the basic picture presented by these data suggests that he best fits the Mild Mentally Retarded group, taking into consideration the physical limitations he apparently has, which prevent him from using Nonverbal skills, and/or Physical activities.

(Tr. 193).

On September 26, 2013, Dr. Kathleen Ward, Ph.D., conducted a Mental Status Examination of the claimant (Tr. 274). She also noted the claimant's report of an inability to read or write (Tr. 274). She did not find any significant deficits in the claimant's thought processes or judgment, and further indicated that he was able to complete serial 3's through 30, spell "world" forward and backward, knew the President's name as well as the two previous Presidents, and was able to repeat three items immediately and after five minutes (Tr. 276). She found the claimant to be an unreliable historian, and opined that a full intellectual functioning/learning disorder evaluation might help "clarify the diagnostic picture" (Tr. 277). She assessed him with rule out learning disorder, substance abuse v. dependence by history, and mood disorder not otherwise specified (Tr. 277).

A February 20, 2014 Case Analysis notes stated that the claimant's emotional functioning had improved following his incarceration, but that questions regarding his intellectual functioning would require a repeat WAIS (Tr. 292). A response four days later opined that a new WAIS was not needed because those scores are considered permanent, then asserted that they did not have medical evidence regarding the claimant's intellectual functioning prior to age 18 (which goes to Listing evaluations) (Tr. 293).

State reviewing physicians found the claimant's mental impairment of affective disorders to be nonsevere (Tr. 54-55, 58-69). They made no mention of the claimant's IQ scores, nor of his reported inability to read or write.

In his written opinion, the ALJ determined the claimant's severe impairments at step two, and summarized most of the medical evidence in the record, including Dr. Beck's evaluation and Dr. Ward's examination (Tr. 23-25). At step three, he assessed whether the claimant met Listings 12.02 and 12.04, but *not* 12.05 or 12.08, and ultimately concluded that the claimant did not meet a Listing (Tr. 25-27). At step four, the ALJ summarized the claimant's hearing testimony and referenced the medical evidence summarized at step two. However, he made no findings as to the weight he afforded any of the evidence mentioned at step two, instead stating that he was entitled to "piece together the relevant medical facts from the findings and opinions of multiple physicians" (Tr. 29). As to the claimant's mental impairments, he simply commented that the claimant's mood and affect were stable while he was in prison, then assigned partial weight to the opinions of the state reviewing physicians. He did not differentiate between the findings regarding physical and mental impairments, but simply stated that the claimant was "more limited by his impairments than was previously determined," and that those unspecified "greater limitations" had been taken into account in the claimant's RFC (Tr. 30). He did not address, among many other things, the claimant's IQ scores or his inability to read, in relation to the RFC assessment (Tr. 27-30).

Although the claimant bears the burden of proof at step three to establish that he meets or equals the requirements for a listed impairment, *see Fischer-Ross v. Barnhart*,

431 F.3d 729, 733 (10th Cir. 2005), the ALJ's responsibilities at step three of the sequential analysis require him to determine "whether the claimant's impairment is equivalent to one of a number of listed impairments that . . . [are] so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) [quotation omitted]. *Clifton* requires the ALJ to discuss the evidence and explain why claimant was not disabled at step three. *Id*. at 1009, *citing Cook v. Heckler*, 783 F.2d 1168, 1172-73 (4th Cir. 1986).

In this case at step three, the ALJ made no findings with regard to Listing 12.05C, despite evidence in the record that this specific Listing might be applicable. In order to satisfy section 12.05C to establish intellectual disability at the time of the ALJ's opinion, the claimant must first satisfy the diagnostic description included in the introductory paragraph which requires that the claimant possess "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i. e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.05 (August 12, 2015 to May 23, 2016). This initial requirement is referred to as the "capsule definition." *Peck v. Barnhart*, 214 Fed. Appx. 730, 736 (10th Cir. 2006) [unpublished opinion]. In addition to satisfying the capsule definition, the claimant must also satisfy two additional prongs in order to meet the requirements of Listing 12.05C: "a valid verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.05C (emphasis added).

The ALJ's opinion reflects the complete absence of analysis with regard to this

Listing. As to the capsule definition applicable to the entirety of Listing 12.05, "a claimant 'is not required to affirmatively prove that he [had an intellectual disability] prior to reaching the age of twenty two so long as there was no evidence that the claimant's IQ had changed.'" *Johnson v. Colvin*, 2016 WL 7176655, at *5-6 (W.D. Okla. Dec. 8, 2016), *quoting McKown v. Shalala*, 5 F.3d 546, 1993 WL 335788 at *3 (10th Cir. Aug. 26, 1993) (unpublished table opinion). "As one of our sister courts has found, an IQ score within the range in the regulation 'is itself some evidence of mental retardation before age twenty-two." *Young v. Colvin*, 2013 WL 5417211, at *4 (E.D. Okla. Sept. 26, 2013), *quoting Fox v. Barnhart*, 2007 WL 1063198, at *5-6 (D. Kan. April 2, 2007) (collecting cases).

More importantly, if the claimant "does not meet the capsule definition, then the ALJ must make that determination in the first instance." *Peck*, 214 Fed. App. at 736. Thus, if the ALJ disagreed with the record regarding the claimant's impairments and whether they were established prior to age 22, he was required to discuss his reasons for such a finding. *See, e. g.*, *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others. We therefore remand so that the ALJ can explain the evidentiary support for his RFC determination.").

The SSA has not adopted a standard to measure what constitutes "'deficits of adaptive functioning' under the capsule definition of Listing 12.05(C). Instead, the SSA allows use of the measurement methods authorized by four major professional organizations dealing with mental retardation. . . . The ALJ's decision, however, is silent with respect to what method he used to measure Plaintiff's deficits of adaptive functioning." *Johnson v. Colvin*, 2016 WL 7176655, at *6 (W. D. Okla. Dec. 8, 2016), *citing Barnes v. Barnhart*, 116 Fed. Appx. 934, 942 (10th Cir. 2004). The Court thus finds that the ALJ ignored evidence to support the likelihood the claimant had deficits in adaptive functioning prior to age 22, particularly his reports of special education classes while he was in school and his IQ test. *See Johnson*, 2016 WL 7176655, at *7 ("Significantly, the ALJ failed to explain why Plaintiff's completion of the tenth grade, in light of the additional evidence that she was recommended for special education classes and could not complete her GED, supports a finding that she did not have the requisite deficits in adaptive functioning to support the Listing 12.05(C) criteria.").

Turning to the two prongs of section 12.05C, "'the purpose of § 12.05C is to compensate a claimant with an IQ in the 60-70 range and a limitation of function that affects his work.'" *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), *quoting Sird v. Chater*, 105 F.3d 401, 403 n.6 (8th Cir. 1997). With respect to the requirements specifically comprising Listing 12.05C, the claimant appears to satisfy the first prong since his Verbal Score was 68. *See id*. § 12.00D(6)(c) ("In cases where more than one IQ is customarily derived from the test administered, *e. g.*, where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction

with 12.05."). Although it is true that a proper rejection of an IQ score as invalid is a sufficient basis for an ALJ to find that a claimant does not meet Listing 12.05C, *see Lax v. Astrue*, 489 F.3d 1080, 1087 (10th Cir. 2007), there is no such finding in this case. In fact, although the ALJ made no findings with regard to these scores and assigned them no weight, he recited the scores without discounting them and the state reviewing physicians likewise appeared to consider the scores valid (Tr. 23-24, 292-293).

The second prong of Listing 12.05C requires the claimant to have a "physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05C. The Tenth Circuit has adopted the view of the First and Eleventh Circuits that a "§ 12.05C limitation is significant if the claimant suffers from a severe physical or other mental impairment, as defined at step two of the disability analysis, apart from the decreased intellectual function." *Hinkle*, 132 F.3d at 1352. ("We conclude the analysis employed by the First and Eleventh Circuits is the better interpretation of what must be shown to satisfy the second prong of § 12.05C."), *citing Edwards v. Heckler*, 736 F.2d 625, 629-631 (11th Cir. 1984) and *Nieves v. Secretary of Health & Human Services*, 775 F.2d 12, 14 & n.7 (1st Cir. 1985). "[W]hether a claimant has a § 12.05C 'significant limitation' should 'closely parallel' the step two standard, and is to be made without consideration of whether the claimant can perform any gainful activity beyond the analysis as made at step two." *Hinkle*, 132 F.3d at 1352-1353, *citing Fanning v. Bowen*, 827 F.2d 631, 634 (9th Cir. 1987) (if claimant meets the § 12.05C listing and the durational requirement, "he must be found disabled without consideration of his age, education, and work experience[.]") [internal citations

omitted]. Here, the ALJ determined that the claimant had the severe impairments of bipolar disorder, ADHD, mental health issues under Listing 12.08, hernias status post repair, a history of appendix surgery, hypertension, and left knee degenerative joint disease (Tr. 23). This was sufficient to satisfy the second prong. *See Peck*, 214 Fed. Appx. at 734 ("Based on the ALJ's findings [that the claimant had severe impairments that combined to significantly limit her ability to perform basic work-related functions *and* was unable to perform her past relevant work], Peck meets the additional significant impairment requirement under Listing 12.05C."), *citing Hinkle*, 132 F.3d at 1352-1353 & n.4. Thus, the claimant provided evidence that his impairment existed before the age of 22, and *both* that he had an IQ score in the range of 60-70 *and* a "physical or other mental impairment imposing an additional and significant work-related limitation[.]" As stated above, a *proper* rejection of an IQ score as invalid is a sufficient basis for an ALJ to find that a claimant does not meet Listing 12.05C. However, here there is no such proper rejection and the ALJ does seem to rely on Dr. Beck's findings at least to some extent.

But even proceeding to steps four and five, the Court agrees with the claimant's contention that the ALJ failed to properly assess the evidence related to his impairments. First, the deficits identified should have been accounted for in his RFC. This is particularly so with regard to his alleged inability to read or write. "[T]he numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities." 20 C.F.R. § 416.964(b). Although a tenth grade level of formal education is generally classified as a "limited

education," *see* 20 C.F.R. § 416.964(b)(4), the regulations *do allow* for that classification to be modified where, as here, there is evidence that the claimant's actual educational abilities contradict the completed grade level. In this case, the claimant, Dr. Beck, and the prison records all indicated that the claimant was illiterate. However, the ALJ made a finding, without explanation, that the claimant has a "limited education," which is defined as "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs," and that a 7th through 11th grade level of formal education is limited. *See* 20 C.F.R. § 416.964(b)(3). In contrast, "[i]lliteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." 20 C.F.R. § 416.964(b)(1). Despite the evidence in the record to the contrary, the ALJ nevertheless found without explanation that the claimant had a limited education. *See Dollar v. Bowen*, 821 F.2d 530, 535 (10th Cir. 1987) ("The record establishes that Mr. Dollar, although able to sign his name, was functionally illiterate and able to manage only simple financial transactions that do not require reading or writing. A review of the record has revealed absolutely no evidence to the contrary. . . . As a matter of law, the application of grid rules based on his eighth grade education was in error. Thus, the record does not contain substantial evidence to support the ALJ's implicit finding that Mr. Dollar was literate.") [internal citations omitted].

Because the ALJ's findings at steps three, four, and five are not supported by substantial evidence, the decision of the Commissioner should be REVERSED and the case REMANDED to the ALJ for further analysis as outlined above.

**Conclusion**

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 24th day of September, 2018.

_____

**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**